345 F.Supp.2d 527 (2004)
Michael Allen ABEL and Joanie Abel, Plaintiffs,
v.
CAROLINA STALITE COMPANY, LIMITED PARTNERSHIP, and Allen Lee Drew, Defendants.
No. 1:02 CV 00892.
United States District Court, M.D. North Carolina.
November 8, 2004.
*529 James E. Tanner, David M. Clark, Clark Bloss & Wall, PLLC, Greensboro, NC, John Barrow, Windburn Lewis Barrow & Stoltz, P.C., Athens, GA, for Plaintiff.
Ned A. Stiles, Brian S. Rudolph, Stiles Byrum & Home, LLP, Charlotte, NC, for Defendant.

MEMORANDUM OPINION
BEATY, District Judge.

I. INTRODUCTION
The present action came before the Court for a trial by jury during a session of court beginning April 5, 2004. After the evidence was presented, the following five issues were presented to the jury: (1) Was Plaintiff Michael Allen Abel injured by the negligence of Defendant Allen Lee Drew?; (2) Was Plaintiff Michael Allen Abel injured by the negligence of Defendant Carolina Stalite Company?; (3) What amount, if any, is Plaintiff Michael Allen Abel entitled to recover of Defendants for his injuries?; (4) Did the negligence of Defendants proximately cause Plaintiff Joanie Abel to lose the consortium of Plaintiff Michael Allen Abel?; (5) What amount, if any, is Plaintiff Joanie Abel entitled to recover of Defendants for loss of consortium? On April 15, 2004, a jury verdict was returned. As to the first three issues, the jury found that Plaintiff Michael Allen Abel was injured by the negligence of both Defendants and awarded him damages in the amount of $46,575.00. As to the final two issues, the jury found in favor of Defendants on Plaintiff Joanie Abel's claim for loss of consortium. A form Judgment [Document # 62] was entered by the Court on May 11, 2004, and an Amended Judgment [Document # 67] was later filed on July 9, 2004. Plaintiffs filed a Motion for a New Trial [Document # 57] on April 26, 2004, and a hearing was held on that Motion on August 4, 2004. Plaintiffs' motion requested a new trial on the issue of damages, and alternatively, a new trial on all issues. This motion is now before the Court.

II. FACTUAL BACKGROUND
The facts as presented at trial are briefly summarized as follows: As of February 28, 2000, Plaintiff Michael Allen Abel ("Michael Abel" or "Mr. Abel") was employed as a truck driver by R & S Senter Trucking, Inc. ("R & S Senter") in Georgia. On that date, Mr. Abel and another driver for R & S Senter, J.R. Day ("Mr.Day"), arrived at the premises of Defendant Carolina Stalite Company, Limited Partnership ("Carolina Stalite") in Rowan County, North Carolina. Carolina Stalite operates a surface mining operation and produces aggregate material used in concrete manufacturing. Mr. Abel and Mr. Day had planned to pick up a load of aggregate material at Carolina Stalite and drive it to a destination in Georgia. When they arrived at Carolina Stalite, Mr. Abel drove his tractor-trailer to an open area near a stockpile of the aggregate that was to be loaded into his trailer. As he waited for the Carolina Stalite employees to load his trailer, he remained in the cab of the truck doing paperwork.
Defendant Allen Drew ("Mr. Drew" or "Defendant Drew"), an employee of Carolina Stalite, operated the front-end loader that was used to load the aggregate material into trucks. As Mr. Drew was driving the front-end loader to the stockpile where *530 Michael Abel was waiting, he collided with the rear of Mr. Abel's trailer. Michael Abel was still in the cab at the time of the collision, and testified that he was thrown towards the front of the cab. At trial, Defendants admitted that Mr. Drew was negligent in causing the collision. Although Mr. Abel complained of neck pain to one employee of Carolina Stalite, he indicated that he was not seriously injured. Mr. Abel testified that he did not remember being hit in the eye. After the collision, he and Mr. Day proceeded to make the drive to Georgia in order to deliver the load of aggregate to a site in Georgia as planned. However, during the course of that return trip, Mr. Abel complained of increasing pain in his neck and back. Both he and Mr. Day also testified that a knot appeared above his right eye. Due to the pain in his neck and back, Mr. Abel did not complete the delivery to the site in Georgia as planned. Instead, Mr. Abel returned directly to R & S Senter in Georgia where his wife, Plaintiff Joanie Abel ("Joanie Abel" or "Ms. Abel"), picked him up and drove him to a physician.
As a result of the accident, Mr. Abel suffered a neck and back injury, and was forced to undergo back surgery approximately nine months after the collision. Mr. Abel's treatment included upwards of 30 office visits, several painful procedures, hospitalization for the back surgery, and numerous pain medications during the months following the collision. Mr. Abel was also forced to miss time from work as a result of the neck and back injuries, but the injuries were not so severe as to prevent him from continuing his career as a truck driver. The injuries resulted in Mr. Abel receiving from his physician a permanent partial disability rating of eight percent to his neck and back. At trial, some evidence was presented that Mr. Abel suffered from a degenerative disc disease prior to the collision. However, the evidence presented at trial clearly supported the conclusion that Mr. Abel's neck and back injuries were caused by the collision, and Defendants did not present any evidence to contest that Mr. Abel's neck and back injuries were causally related to the collision.
Approximately five or six months after the collision, Mr. Abel began to notice blurred vision in his right eye. Approximately eight months after the collision, he sought medical treatment for the eye, and was eventually diagnosed with a choroidal rupture in his right eye. The choroidal rupture resulted in a permanent loss of central vision in his right eye. As a result, he was not able to maintain his commercial driver's license, and thus was no longer able to continue his career as a truck driver.
A significant portion of the trial was dedicated to both Plaintiffs and Defendants attempting to prove that Mr. Abel's eye injury was or was not causally related to the collision at Carolina Stalite. Both Plaintiffs and Defendants presented qualified and equally relevant testimony by specialists in the field of this particular type of eye injury. The experts agreed about the diagnosis of the injury suffered by Mr. Abel and agreed that his permanent vision loss was caused by the choroidal rupture. Both experts also agreed that a choroidal rupture is generally caused by a direct blow to the eyeball, and that the loss of vision caused by a choroidal rupture does not appear until several months after the trauma to the eye. However, the experts gave divergent opinions as to whether Mr. Abel's injury was proximately caused by the collision at Carolina Stalite. Plaintiffs' expert was of the opinion that the injury likely resulted from a blow to the eye during the course of the accident. Defendants' expert stated that a blow of the force sufficient to cause Mr. Abel's injury *531 would have been painful and immediately noticeable to Mr. Abel. Because Mr. Abel testified that he did not remember being hit in the eye during the collision, Defendants' expert opined that the injury was idiopathic, meaning that it had simply developed without any particular trauma to the eye.
During the trial, Plaintiffs presented evidence of the past and future economic consequences of Mr. Abel's injuries, including damages for the injury to his neck and back and damages for the injury to his eye. The evidence regarding damages related to the injury to Plaintiffs neck and back included evidence of past medical expenses totaling $22,008.21; future medical expenses of $44,596.20 for his prescribed pain medicine; future medical expenses of $3,355.20 for annual visits to a physician; lost income in the amount of $15,286.92 for the year 2000 related to his back surgery; and a future loss of earning capacity in the amount of $52,426.25, for a total of $137,672.78 in economic consequences related solely to Mr. Abel's neck and back injuries. With regard to the injury to Mr. Abel's eye, Plaintiffs presented additional evidence of medical expenses, lost earnings, and an additional twenty-four percent permanent disability.
At the conclusion of the trial, the jury found that Plaintiff Michael Allen Abel was injured by the negligence of both Defendants and awarded him damages in the amount of $46,575.00. However, the jury found in favor of Defendants on Plaintiff Joanie Abel's claim for loss of consortium. Plaintiffs now argue that they are entitled to a new trial because the jury's award of damages to Michael Abel was inadequate and was against the weight of the evidence. Plaintiffs also argue that they are entitled to a new trial on Joanie Abel's loss of consortium claim. The Court will consider each of these contentions in turn.

III. DISCUSSION

A. Plaintiffs' Motion for a New Trial as to Michael Abel's Damages.
As previously noted, although Michael Abel was awarded the sum of $46,575.00 by the jury, he now argues that, in light of the severity of the injuries he sustained and the economic damages caused by those injuries, the amount of the jury award is so inadequate as to warrant a retrial on the issue of damages. Defendants contend that the award granted to Michael Abel is well with the parameters of a fair verdict and that the award accurately represents the damages proven by Plaintiffs at trial.
In a diversity action in federal district court, a motion to set aside the jury's verdict and grant a new trial is a matter of federal procedure, but state law standards are used to evaluate a challenge to the amount of the jury's compensatory damage award. Konkel v. Bob Evans Farms, Inc., 165 F.3d 275 (4th Cir.1999); Aetna Cas. & Sur. Co. v. Yeatts, 122 F.2d 350 (4th Cir. 1941). Rule 59(a) of the Federal Rules of Civil Procedure provides that "[a] new trial may be granted to all or any of the parties and on all or part of the issues." This rule has been interpreted to allow the trial court to set aside the verdict and order a new trial if the verdict is: (1) against the clear weight of the evidence; or (2) based on false evidence; or (3) will result in a miscarriage of justice. Wyatt v. Interstate & Ocean Transp. Co., 623 F.2d 888, 891 (4th Cir.1980); Spell v. McDaniel, 606 F.Supp. 1416 (E.D.N.C.1985). In evaluating a motion for a new trial, the district court has not only the discretion but the duty to "weigh the evidence and consider the credibility of witnesses." Swentek v. USAIR, Inc., 830 F.2d 552, 559 (4th Cir. 1987). The same principles govern the right of the Court to set aside a verdict when it is attacked for inadequacy as when *532 it is attacked for excessiveness. De Foe v. Duhl, 286 F.2d 205 (4th Cir.1961). The exercise of this power to grant a new trial "is not in derogation of the right of trial by jury but is one of the historic safeguards of that right." Gill v. Rollins Protective Services Co., 836 F.2d 194, 196 (4th Cir.1987). North Carolina courts follow similar standards in considering a motion for a new trial based on the amount of the jury award. See Robertson v. Stanley, 285 N.C. 561, 564, 206 S.E.2d 190, 192 (N.C. 1974) (providing that a jury's verdict should be set aside where "the verdict is contrary to law, inconsistent [or] invalid" or where "the verdict is contrary to the greater weight of the credible testimony"); Britt v. Allen, 291 N.C. 630, 634, 231 S.E.2d 607, 611 (1977) (noting that ruling on a motion for a new trial "requires [the judge's] appraisal of the testimony").
At trial, Mr. Abel presented evidence of injuries both to his neck and back and to his eye. As discussed above, the expert testimony presented at trial by both Plaintiffs and Defendants raised serious question as to whether Mr. Abel's eye injury was causally related to the collision at the Carolina Stalite work-site. In the opinion of the Court, both parties presented credible evidence and expert testimony to support their respective positions. However, the jury's verdict did not distinguish between the types of injuries, and the verdict concluded simply that Mr. Abel was injured by the negligence of Defendant Drew and Carolina Stalite.
Plaintiffs contend that even if the jury determined that Mr. Abel's eye injury was not proximately caused by the collision, the question remains as to whether a sufficient award was entered by the jury to compensate Mr. Abel for the injuries to his neck and back. Solely with respect to Mr. Abel's neck and back injury, Plaintiffs presented evidence that Mr. Abel had past medical expenses totaling $22,008.21; future medical expenses of $44,596.20 for his prescribed pain medicine; future medical expenses of $3,355.20 for annual visits to a physician; lost income in the amount of $15,286.92 for the year 2000; and a future loss of earning capacity in the amount of $52,426.25, for a total of $137,672.78 in economic consequences related solely to Mr. Abel's neck and back injuries. Some of the economic damages were contested by Defendants, and it certainly was within the jury's discretion to believe what portions of the medical evidence they chose to believe in not compensating Mr. Abel in the full amounts that he requested. See Smith v. Beasley, 298 N.C. 798, 801, 259 S.E.2d 907, 909 (1979). However, the Court notes that the jury award of only $46,575.00 is substantially below the sum of Mr. Abel's requested economic damages, even for just his neck and back injury. In addition, although there is no predetermined amount that a jury is required to award to a party claiming damages, the jury was instructed by the Court to award an appropriate amount for Michael Abel's past and future pain and suffering, as well as the partial loss of use of the body corresponding to his eight percent permanent partial disability rating. See Robertson, 285 N.C. at 565, 206 S.E.2d at 193 (holding that "[t]he law is well settled in this jurisdiction that in cases of personal injuries resulting from defendant's negligence, the plaintiff is entitled to recover the present worth of all damages naturally and proximately resulting from defendant's tort" and the jury may not arbitrarily ignore plaintiffs proof of pain and suffering).
Plaintiffs argue that the award of $46,575.00 is substantially below what Plaintiffs contend their evidence established, even for just the neck and back injury alone. While the Court is cognizant *533 of the long-standing principle that it is not the role of the Court to substitute its judgment for that of the jury, see Mattison v. Dallas Carrier Corp., 947 F.2d 95, 108 (4th Cir.1991), in light of the evidence of economic damages presented by the Plaintiffs, and the testimony of Mr. Abel and Joanie Abel in regard to the severity of the injuries Mr. Abel sustained to his neck and back, the Court finds that the verdict awarded by the jury can not be reconciled with the evidence presented at trial. As stated above, it is the duty of the Court to determine if the amount awarded by the jury is contrary to law, invalid, inconsistent, or "against the clear weight of the evidence." Bryant v. Aiken Reg. Med. Ctrs., Inc., 333 F.3d 536, 546 (4th Cir. 2003); Robertson, 285 N.C. at 564, 206 S.E.2d at 192. After viewing all of the evidence as a whole and weighing the evidence presented, the Court finds that the award given to Mr. Abel by the jury is in fact contrary to law and against the clear weight of the evidence. Cf. Robertson, 285 N.C. at 565-67, 206 S.E.2d at 193-94 (noting that "[t]he amount of damages is largely within the jury's discretion. However, they must award something for every element of damage resulting from an injury."). For this reason, in accordance with Fed.R.Civ.P. 59, the Court finds that a new trial is necessary on the issue of damages with respect to the injuries Mr. Abel sustained to his neck and back.
With regard to the injury to Mr. Abel's eye, it is impossible to determine from the jury's verdict whether they concluded that Mr. Abel's eye injury was proximately caused by the collision at Carolina Stalite. Of course, if the jury's damage award was intended to compensate Mr. Abel for his eye injury as well as his neck and back injury, there is no doubt that the amount of the award was against the weight of the evidence, since the award was inadequate even for just the neck and back injury considered alone. Because the Court cannot determine what conclusion the jury may have reached with respect to Mr. Abel's eye injury, the Court will grant Mr. Abel a new trial with respect to all of the damages he contends were proximately caused by Defendants' negligence, including both the neck and back injury and the eye injury.
However, Fed.R.Civ.P. 59 does not require that every issue presented to the jury in the first trial be presented to the jury again. Rather, "where the requirement of a jury trial has been satisfied by a verdict according to law upon one issue of fact, that requirement does not compel a new trial of that issue even though another and separable issue must be tried again." Gasoline Prods. Co. v. Champlin Ref. Co., 283 U.S. 494, 499, 51 S.Ct. 513, 515, 75 L.Ed. 1188 (1931). In fact, "a new trial can be limited to any separable matter." Rice v. Community Health Association, 203 F.3d 283, 290 (4th Cir.2000). Limiting a new trial to select issues is appropriate when "it appears to the court that justice can be done by limiting the retrial to the area in which error occurred." Atlantic Coast Line R.R. Co. v. Bennett, 251 F.2d 934, 938 (4th Cir. 1958). Thus, the Court may grant a partial new trial when the reason for the new trial "is confined to one issue, which is entirely separable from the others, and it is perfectly clear that there is no danger of complication." Robertson, 285 N.C. at 568, 206 S.E.2d at 195.
In this case, the issue of Defendants' liability for the collision itself was determined by the jury in the first trial, and a retrial of that issue is unnecessary. A retrial of that issue is particularly unnecessary here, since Defendants admitted at trial that Defendant Drew was negligent in causing the collision with Mr. Abel's *534 truck on February 28, 2000, and it was further stipulated that Defendant Drew was acting within the scope of his employment, thus imputing liability to Carolina Stalite under the doctrine of respondeat superior. This issue is distinct and separable from the question of damages
Therefore, on retrial, it is the intention of the Court to instruct the jury that it has already been determined that Defendants were negligent in causing the collision itself, and that the jury need not address that question. The jury's duty will be to decide whether Mr. Abel's claimed injuries were proximately caused by the collision. The Court intends to present these issues to the jury as follows: "(1) Were Mr. Abel's neck and back injuries proximately caused by Defendant Drew's negligent collision with Mr. Abel on February 28, 2000? (2) If so, what amount of damages is Mr. Abel entitled to recover of Defendants for these injuries? (3) Was Mr. Abel's eye injury proximately caused by Defendant Drew's negligent collision with Mr. Abel on February 28, 2000? (4) If so, what amount of damages is Mr. Abel entitled to recover of Defendants for this injury?".
This formulation of the issues is based on the Court's conclusion that a retrial is not necessary on the issue of Defendants' liability for the collision itself, but a retrial is necessary on the issue of what injuries to Michael Abel were proximately caused as a result of the collision, and what amount of damages should be awarded to Mr. Abel to compensate for these claimed injuries.

B. Plaintiffs' Motion for a New Trial as to Joanie Abel's Loss of Consortium Claim.
In addition to requesting a new trial as to Plaintiff Michael Abel's damages, Plaintiffs also assert that a new trial is necessary on Joanie Abel's claim for loss of consortium. At trial, Joanie Abel presented testimony that her relationship with Michael Abel was not the same as it was before the February 28, 2000 collision. In particular, she noted that Michael Abel's mood had worsened, that they now rarely left the house and that their sexual relations were less frequent. For these reasons, she claimed a loss of consortium. At the conclusion of the trial, the jury considered the question "Did the negligence of Defendants proximately cause Plaintiff Joanie Abel to lose the consortium of Plaintiff Michael Allen Abel?" The jury answered "No." As shown by the jury's verdict, Joanie Abel failed to establish by a preponderance of the evidence that she sustained any loss of consortium as a result of Defendants' negligence.
Just as with Mr. Abel's claim, the district court has not only the discretion but the duty to "weigh the evidence and consider the credibility of witnesses" to determine if the finding of the jury is contrary to law or against the clear weight of the evidence. Swentek, 830 F.2d at 559. In weighing the evidence, the Court finds that the testimony presented by Joanie Abel as to her loss of consortium, even if believed by the jury, could well have been attributed to causes other than the injuries Mr. Abel sustained from the collision. In particular, the evidence at trial supported the conclusion that Mr. Abel's depression and poor emotional state existed before the collision, as shown by the fact that Mr. Abel had been prescribed Xanax, an antidepressant, long before the collision at issue. Therefore, Joanie Abel's loss of consortium, to the extent that it existed, could have been attributed to other emotional problems Mr. Abel had experienced unrelated to his physical injuries. Thus, the Court concludes that the jury's finding that the negligence of Defendants did not proximately cause Joanie Abel to lose the *535 consortium of Michael Allen Abel is not against the clear weight of the evidence. The Court therefore finds that a new trial on this issue of Joanie Abel's claim of loss of consortium is not warranted.

IV. CONCLUSION
In conclusion, because the damages awarded to Michael Abel for his neck and back injuries, in particular, are against the clear weight of the evidence, the Court finds that it is necessary to have a new trial on the issue of whether any or all of the injuries claimed by Mr. Abel were proximately caused by Defendants' negligent collision with Mr. Abel's vehicle on February 28, 2000, and, if so, the amount of damages to be awarded for those injuries. However, a new trial is not necessary with regard to Defendants' liability for the collision itself. Finally, the jury's verdict regarding Joanie Abel's claim for loss of consortium is not against the clear weight of the evidence and a new trial is not warranted on that issue. Accordingly, Plaintiffs' Motion for a New Trial [Document # 57] is granted in part, and denied in part. An Order consistent with this Memorandum Opinion shall be filed contemporaneously herewith.

ORDER
For the reasons stated in the Memorandum Opinion filed contemporaneously herewith, IT IS HEREBY ORDERED, that Plaintiffs' Motion for a New Trial [Document # 57] is GRANTED IN PART and DENIED IN PART. The Motion is GRANTED to the extent that a new trial is necessary on the issue of whether any or all of the injuries claimed by Plaintiff Michael Abel were proximately caused by Defendants' negligent collision with Mr. Abel's vehicle on February 28, 2000, and, if so, what amount of damages should be awarded to Plaintiff Michael Abel to compensate for his claimed injuries. However, Plaintiffs' Motion for a New Trial is DENIED as to Plaintiff Joanie Abel's claim for loss of consortium.
As a result of this Order, the Court hereby specifically directs that the retrial granted by this Order be scheduled before this Court during the January 3, 2005 session of the Court's Civil Master Calendar.