McFARLAND v. CROMER

[117 N.C. App. 678 (1995)]

---

JANETTE McFARLAND, Administratrix of the Estate of KENNETH CARR, Deceased, Plaintiff v. ROBERT CROMER, aka ROBERT CHAD CROMER, Defendant

No. 9419SC221

(Filed 7 February 1995)

## 1. Trial § 563 (NCI4th)— automobile accident—damages— refusal to set aside award—any error harmless

Any error by the jury in its award of damages in an automobile accident case was harmless where decedent died as a result of injuries sustained in an automobile accident in Idaho; the accident was caused by the negligence of a North Carolina resident; defendant admitted negligence and the case was tried solely on the issues of comparative negligence and damages; plaintiff's expert testified that the estate suffered a loss of $160,826, though he could not estimate the amount that plaintiff, decedent's mother and the administratrix of the estate, would have received in support from her son; plaintiff introduced medical expenses of $24,977.61 that had been paid by the Navy and funeral expenses of approximately $5,000; defendant testified that he and decedent

McFARLAND v. CROMER

[117 N.C. App. 678 (1995)]

had been drinking on the day of the accident, that decedent had been aware of this when he agreed to ride with defendant, and that decedent had in the past consumed alcohol and ridden with other drivers who had been drinking; the jury was instructed to apply the law of Idaho, found defendant 51% at fault and decedent 49% and awarded plaintiff $2,890 in damages; and, after post-trial motions, the trial court added plaintiff's medical expenses of $24,977.61 to the jury award of $2,890, reduced the total by 49% to $14,212.48, and set off that amount against collateral sources totalling $86,677.61, and entered judgment that plaintiff recover nothing. The evidence of damages was conflicting, and the jury was free to believe or disbelieve plaintiff's evidence. There is nothing in the record to indicate that the jury award was influenced by passion or prejudice, any failure of the jury to award plaintiff an amount equal to the medical bills was cured by the trial court's additur, and, since a set-off of $86,677.61 from collateral sources was required, plaintiff's verdict would have to exceed this sum and any purported error by the jury in its failure to award medical and funeral expenses was harmless.

**Am Jur 2d, New Trial §§ 393 et seq.**

**Unsatisfied claim and judgment statutes: validity and construction of provisions for deduction from award of sums collectible by claimant from other sources. 7 ALR3d 836.**

2. **Evidence and Witnesses § 185 (NCI4th)— automobile accident—intoxicated driver and passenger—action by passenger—evidence of passenger's past drinking habits— admissible**

Evidence of a decedent's past drinking habits was admissible in an action arising from an automobile accident in which the decedent was the passenger, the driver and decedent had been drinking, and contributory negligence was an issue. Evidence of the deceased's drinking habits was relevant to his knowledge of the effects of alcohol. While plaintiff argued that the probative value was outweighed by the prejudicial effect of the evidence, there was other damaging testimony about the decedent's drinking habits to which plaintiff did not object. N.C.G.S. § 8C-1, Rule 404(b).

**Am Jur 2d, Evidence § 557.**

**3. Damages § 53 (NCI4th)— automobile accident in Idaho— Idaho law—collateral source—Navy subrogation**

The trial court did not err by including the medical payment by the Navy as a collateral source where the decedent was in the Navy; died in an automobile accident in Idaho; medical expenses paid by the Navy were included as a collateral source under Idaho law; plaintiff contended that the medical payments should not be treated as a collateral source because the Navy is required to seek subrogation for the payment; but the Navy had taken no action beyond providing plaintiff's counsel with notice of its subrogation claim.

**Am Jur 2d, Damages §§ 566 et seq.**

**Unsatisfied claim and judgment statutes: validity and construction of provisions for deduction from award of sums collectible by claimant from other sources. 7 ALR3d 836.**

Appeal by plaintiff from judgment entered 28 October 1993 by Judge Judson D. DeRamus, Jr. and filed in Randolph County Superior Court. Heard in the Court of Appeals 10 January 1995.

*Michael R. Nash for plaintiff-appellant.*

*Teague, Rotenstreich and Stanaland, by Stephen G. Teague, for defendant-appellee Cromer.*

*Pinto, Coates & Kyre, L.L.P., by Kenneth Kyre, Jr., for unnamed defendant-appellee.*

WALKER, Judge.

Decedent Kenneth Carr died on 22 September 1990 as a result of injuries sustained in an automobile accident in Idaho on 20 September 1990. The accident was caused by the negligence of defendant Cromer, a resident of Randolph County, North Carolina. Carr and Cromer were then members of the United States Navy assigned to a nuclear systems training facility in Idaho. Decedent Carr's mother, Janette McFarland, qualified as administratrix of his estate. On 27 July 1992, McFarland filed suit in Randolph County Superior Court against defendant. The matter came on for jury trial and defendant admitted negligence causing the decedent's death. The case was tried solely on the issues of comparative negligence and damages.

Plaintiff's evidence showed that at the time of his death, her son was in excellent health, enjoyed the Navy, excelled in the nuclear power program, and that she and her son had enjoyed a close relationship. She also testified that her son would occasionally send her money from his Navy paycheck. Plaintiff's expert, Dr. Finley Lee, an economist, expressed the opinion that the Estate suffered an economic loss of $160,826.00 as a result of Carr's death, though he could not estimate what amount, if any, plaintiff would have received in the way of support from her son. Plaintiff also introduced medical expenses of $24,977.61 that had been paid by the United States Navy and funeral expenses of approximately $5,000.00 which included charges for flowers and a luncheon.

Defendant testified that he had become friends with Carr while both were serving in the Navy and that he, Carr, and other friends socialized together and sometimes drank alcoholic beverages together. Defendant testified that on the day of the fatal accident, he and Carr had been drinking and that Carr was aware of this fact when he agreed to ride with defendant to and from a desert shooting range. Further, defendant introduced, over plaintiff's objection, evidence that Carr had in the past consumed alcoholic beverages and had ridden with other drivers who had been drinking. Plaintiff's motion for a directed verdict on the issue of comparative negligence was denied.

The jury, after being instructed to apply the law of Idaho, awarded plaintiff $2,890.00 in damages, finding defendant 51% at fault and decedent Carr 49% at fault. Plaintiff's motion for a new trial was denied, and the trial court entered judgment in accordance with the jury verdict, subject to further proceedings if defendant filed post-trial motions. On 15 October 1993, plaintiff filed a motion for a new trial. Four days later, defendant filed motions to alter or amend the judgment and to strike plaintiff's motion on the ground that it had already been decided by the court.

All post-trial motions were heard on 28 October 1993. The trial court added plaintiff's medical expenses of $24,977.61 to the jury award of $2,890.00, reduced the total by 49% to $14,212.48, and set off this amount against collateral sources totalling $86,677.61 (including $24,977.61 in medical expenses paid by the Navy). The trial court then entered judgment that plaintiff recover nothing and signed an order denying plaintiff's motion for a new trial.

[1] Plaintiff's first assignment of error is that the trial court erred in refusing to set aside the jury award as inadequate as a matter of law

because the jury incorrectly omitted an award for medical expenses and other damages in spite of uncontradicted evidence of such damages, and gave an award for only part of the funeral expenses. Plaintiff argues that the inadequacy of the award suggests the verdict was the result of an impermissible compromise; therefore, a new trial on the issues of damages and comparative negligence should be granted.

Rule 59 of the North Carolina Rules of Civil Procedure provides that a new trial may be granted on the grounds of "[E]xcessive or inadequate damages appearing to have been given under the influence of passion or prejudice. . . ." N.C. Gen. Stat. § 1A-1, Rule 59(a)(6) (1994). Whether to grant a Rule 59 motion for a new trial on the grounds of excessive or inadequate damages is within the sound discretion of the trial judge, and the judge's decision may be reversed on appeal only when such decision amounts to a "manifest abuse of discretion." *Worthington v. Bynum*, 305 N.C. 478, 482, 290 S.E.2d 599, 602 (1982).

Plaintiff relies on the case of *Robertson v. Stanley*, 285 N.C. 561, 206 S.E.2d 190 (1974), in support of her motion for a new trial. In *Robertson*, the North Carolina Supreme Court reversed a trial court's denial of a motion for a new trial based on inadequate damages because it was clear that the jury had ignored uncontradicted proof of damages for pain and suffering. *Id.* at 568, 206 S.E.2d at 195. *Robertson* is distinguishable from the instant case in two significant ways. First, *Robertson* dealt exclusively with the issue of damages for pain and suffering. Under Idaho law, pain and suffering is not an element of damages recoverable in a wrongful death action. *See* Idaho Code § 5-311 (1994); *Vulk v. Haley*, 736 P.2d 1309, 1313 (1987); Idaho Pattern Jury Instruction 911-1. Second, the proof of pain and suffering in *Robertson* was uncontradicted, and the jury's failure to award damages for pain and suffering was determined by the Court to be arbitrary and improper. *Id.* at 566, 206 S.E.2d at 193-94. In the instant case, the jury heard evidence of the Navy's payment of Carr's medical expenses, of the funeral expenses incurred, and of the economic loss damages; however, it was for the jury to weigh this evidence and to determine what damages, if any, the plaintiff was entitled to recover. The evidence of damages was conflicting, and the jury was free to believe or disbelieve plaintiff's evidence. *Smith v. Beasley*, 298 N.C. 798, 801, 259 S.E.2d 907, 909 (1979). There is nothing in the record to indicate that the jury award was influenced by passion or prejudice, as plaintiff claims. Therefore, under the standard enunciated in Rule

McFARLAND v. CROMER

[117 N.C. App. 678 (1995)]

59, it was not a manifest abuse of discretion for the trial judge to uphold the jury's verdict and to deny plaintiff's motion for a new trial.

We note that any failure of the jury to award plaintiff an amount equal to the medical bills was cured by the trial court's additur of $24,977.61. Furthermore, since a set-off of $86,677.61 from collateral sources was required, obviously plaintiff's verdict would have to have exceeded this sum or she would recover nothing. Therefore, we agree with defendant that any purported error by the jury on its failure to award medical and funeral expenses was harmless.

[2] Plaintiff's second assignment of error is that the trial court erred in overruling plaintiff's objection to the admission of evidence of Carr's past drinking habits. Plaintiff claims that evidence of Carr's "prior, remote use of alcohol" was "irrelevant, prejudicial, and improper character evidence." Defendant responds that the evidence of Carr's drinking habits was relevant to the issue of Carr's knowledge of the effects of alcohol and as such was admissible under North Carolina Rule of Evidence 404(b). Defendant also asserts that the admission of the evidence was not prejudicial to plaintiff. Upon reviewing the record and prior case law from this Court, we hold that the challenged evidence was properly admitted.

Plaintiff first argues that the proffered evidence of Carr's drinking habits was irrelevant. Relevant evidence means "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (1994). Evidence that is not relevant is inadmissible. N.C. Gen. Stat. § 8C-1, Rule 402 (1994).

Defendant contended that Carr was contributorily negligent in riding in the vehicle when he knew that defendant had been drinking. The trial judge instructed the jury that under Idaho law, "where [a] guest passenger [sic] voluntarily ride[s] with an operator who is impaired by alcohol and the guest passenger knew or should have known that the operator was so impaired the conduct of the guest passenger would be negligence within itself." Therefore, Carr's knowledge of alcohol and its effects was relevant to the outcome of this case.

Since Rule 404(b) states that evidence of other acts is admissible to show knowledge, we agree with defendant that evidence of Carr's prior use of alcohol would tend to show that Carr knew the effects of

alcohol consumption and that he knew or should have known that since defendant had been drinking throughout the day of this fatal accident, his ability to drive was impaired. While it is true, as plaintiff points out, that the proffered evidence does not by itself show that Carr knew defendant was under the influence, all of the evidence of Carr's drinking habits, along with the evidence of defendant's drinking habits, especially on the day of the accident, establishes that Carr's prior use of alcohol and his knowledge of its effects was relevant on the issue of contributory negligence.

A recent decision of this Court adds support to our holding that this evidence was relevant. In *Anderson v. Austin*, 115 N.C. App. 134, 443 S.E.2d 737 (1994), evidence of the plaintiff's previous acts and habit of drinking beer and using prohibited substances was admitted. The Court of Appeals upheld the admission of the evidence, noting that

> the evidence showed that plaintiff was taking the same risk on the night in question that he habitually took. The more often plaintiff took this risk, the greater the knowledge he had of the dangers inherent in taking the risk. . . .

*Id.* at 137-38; 443 S.E.2d at 739-40.

In the instant case, defendant contends that Carr's conduct constituted negligence, and knowledge of the "dangers inherent" in drinking and driving is surely relevant in evaluating Carr's decision to ride with an individual he knew had been drinking. Therefore, the trial court properly admitted evidence of Carr's prior drinking habits.

Plaintiff also argues that the probative value of the evidence of Carr's past drinking, if any, was outweighed by its prejudicial effect in that it "diminishe[d] the worth of the decedent in the eyes of the jurors." Plaintiff correctly notes that Rule 403 requires the trial court to balance probative value and prejudicial effect. However, there was other damaging testimony about Carr's drinking habits to which plaintiff did not object. For example, James Willie Brandon, an occupant of the vehicle involved in the fatal accident, testified that Carr was drinking beer at his apartment on the afternoon before the accident; that Carr drank probably eight or nine beers that afternoon; and that Carr drank a beer on the way to the shooting range that night. Defendant testified that he smelled alcohol on Carr's breath just before going to the desert and that everyone (including Carr) drank some beer at the apartment that evening. This evidence, along with other evidence of Carr's previous acts and habits with regard to the

**McFARLAND v. CROMER**

[117 N.C. App. 678 (1995)]

consumption of alcoholic beverages, is relevant and permissible under *Anderson.* Plaintiff has not demonstrated that her case was unfairly prejudiced by the admission of the challenged evidence.

Finally, plaintiff argues that the evidence of Carr's past drinking habits was improper character evidence under Rule 404(b). The portion of the rule quoted by plaintiff in her brief does not support her argument. Because we have already ruled that this evidence was admissible under Rule 404(b) to show Carr's knowledge of the effects of alcohol as it related to the issue of contributory negligence, it was properly admitted.

[3] Plaintiff's final assignment of error is that the trial court erred in concluding that under Idaho law, which prohibits double recoveries from collateral sources, the Navy's payment of $24,977.61 in medical expenses was a collateral source which must be deducted from plaintiff's award.

The collateral sources which the trial court found to be subject to the Idaho statute included the following: $50,000.00 Persian Gulf Conflict Death Gratuity; $1,500.00 funeral benefits paid by Nationwide Mutual Insurance Company; $10,000.00 accidental death benefit paid by Nationwide Mutual Insurance Company; $200.00 social security death benefit; and $24,977.61 in medical expenses paid by the United States Navy.

Plaintiff does not dispute the trial court's decision to reduce her award by the first four collateral sources listed (amounts totalling $61,700.00). However, plaintiff claims that the $24,977.61 Navy payment should not be treated as a collateral source under the Idaho statute because the Navy is required by federal law to seek subrogation for the payment.

Although the Navy apparently did provide plaintiff's counsel with notice of its claim of subrogation lien, including a citation of the provisions of federal law which authorize such a lien, no further action has been taken by the Navy in this matter. Therefore, we cannot conclude that the trial court erred by including the medical payment by the Navy as a collateral source.

In the trial below we find

No error.

Judges EAGLES and GREENE concur.